IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMES SUTTON                                                                                    PLAINTIFF

v.                                              Case No. 4:23-cv-04018

SEVIER COUNTY, ARKANSAS;
ROBERT GENTRY, Officially and in
his Individual capacity; WENDELL
RANDALL, Officially and in his
Individual capacity; JEFF WAHLS,
Officially and in his Individual capacity;
ISAAC ALVARADO, Officially
and in his Individual capacity; BRIAN
HANKINS, Officially and in his Individual
capacity; JERRY PICKETT; JUDY
PICKETT; and JAMES PICKETT                                                     DEFENDANTS

## MEMORANDUM OPINION and ORDER

Before the Court is a Motion for Summary Judgment filed by Defendants Sevier County, Robert Gentry, Wendell Randall, Jeff Wahls, Brian Hankins, and Isaac Alvarado ("County Defendants"). (ECF No. 36). Plaintiff James Sutton ("Plaintiff") has responded. (ECF No. 48). The Court finds the matter ripe for consideration.

### I. BACKGROUND

This case arises from a property dispute between Plaintiff and Defendants Jerry Pickett, Judy Pickett, and James Pickett ("Pickett Defendants.").[1] Plaintiff contends his family owns the property at issue which is comprised of "eighty (80) acres" and a separate area comprised of "three (3) acres," and thus he has the right to be on the land. (ECF No. 41, at 1,2). The Pickett Defendants—who also contend they own the land—are currently in possession of the disputed

---

[1] The Court makes no findings on who owns the disputed property.

eighty (80) acres, three (3) acres, and another undisputed "fifty-five (55) acres." (ECF No. 37-2, at 2). Following Plaintiff's visit to the property, a warrant for his arrest was issued for trespass. Plaintiff was later arrested, though the charges later dismissed. (ECF No. 37-2, at 2). Plaintiff then brought the instant civil action against Pickett Defendants and County Defendants.

On October 14, 2020, Plaintiff and his cousin arrived at a gate that led to the disputed three (3) acres. *Id*. Plaintiff then drove through the disputed three acres and the eighty (80) acres before reaching the undisputed fifty-five (55) acres where Plaintiff encountered Defendant James Pickett.[2] *Id*. Defendant James Pickett then called Defendant Judy Pickett, who called the Sevier County Sheriff's Office. *Id*. Defendant Judy Pickett reported that a trespasser was on her land, and in response, County Defendants Deputy Wendell Randall ("Defendant Randall") and Investigator Jeff Wahls ("Defendant Wahls") were dispatched to the location. (ECF No. 47, at 4). By the time the deputies arrived Plaintiff had left the area. *Id*. at 5. Defendant Judy Pickett then informed the deputies of the property dispute between the Pickett Defendants and Plaintiff over the eighty (80) acres and the three (3) acres. *Id*. It is undisputed that Defendant Judy Pickett told the deputies that Plaintiff had trespassed on the undisputed fifty-five (55) acres. *Id*. It is further undisputed that shortly after arriving, Defendant Jerry Pickett also told the deputies that Plaintiff had been trespassing on the undisputed fifty-five (55) acres. *Id*. at 5.

Based on this information Defendant Randall and Defendant Wahls believed they had probable cause to cite Plaintiff for trespassing. *Id*. Sevier County Sheriff's Office policy required that arrests could only be made with a warrant or upon probable cause. *Id*. at 9. Defendant Randall prepared an affidavit of probable cause and presented it to District Judge Manya Wood ("Judge Wood"). *Id*. at 5. Judge Wood then issued an arrest warrant for Plaintiff for trespassing on the Pickett Defendants' property. *Id*.

---

[2]Plaintiff has stated in a sworn declaration he briefly went onto the undisputed 55 acres. (ECF No. 48-2, at 9).

On October 17, 2020, County Defendant Deputy Isaac Alvarado ("Defendant Alvarado") responded to a trespassing call in Sevier County. *Id*. at 6. Once he arrived, a Game and Fish Officer was present on the scene who informed Defendant Alvarado that Defendant Judy Pickett had spotted Plaintiff's vehicle near the property. *Id*. Defendant Alvarado was aware of the trespassing report made a few days prior and that an arrest warrant had been issued for Plaintiff. *Id*. at 6. Defendant Alvarado then investigated the area and discovered Plaintiff's vehicle, along with a four-wheeler, and another vehicle. *Id*. After briefly being called away from the scene, Defendant Alvarado returned and made contact with Plaintiff. *Id*. Plaintiff told Defendant Alvarado that he was hog hunting on "his land." *Id*. Plaintiff showed Defendant Alvarado various documents in an attempt to show his ownership of the disputed property. *Id*. at 7. After looking at the documents for a few minutes, Defendant Alvarado arrested Plaintiff pursuant to the warrant. *Id*.

Separately—but parallel to these events—Plaintiff had been in communication with Sevier County law enforcement, specifically, County Defendants Sheriff Robert Gentry ("Defendant Gentry") and Investigator Brian Hankins ("Defendant Hankins"). In 2019, Plaintiff reached out to Defendant Hankins several times to discuss the ongoing dispute he had with the Pickett Defendants.[3] *Id*. at 7, 8. Defendant Hankins warned Plaintiff that he might be arrested for trespassing if he went back to the disputed property.[4] *Id*. at 8. Also 2019, Plaintiff and Defendant Gentry had at least one phone conversation regarding the land dispute.[5] (ECF No. 48-1, at 3). Sometime after this conversation, Defendant Gentry states that he put a policy into place

---

[3]Plaintiff states that during this time he had at least one in-person meeting with Defendant Hankins. (ECF No. 48-1, at 3).
[4]Plaintiff disputes that Defendant Hankins told him he might be arrested. (ECF No. 48-1, at 3). Plaintiff states that Defendant Hankins told him with no ambiguity he would be arrested. *Id*.
[5]Plaintiff states that during the conversation with Defendant Gentry he expressed his belief he was being discriminated against because he was Black, and the Pickett Defendants were white. (ECF No. 48-1, at 3-4).

3

stating that it would be improper to arrest Plaintiff for being on the disputed land. (ECF No. 47, at 4).

On March 1, 2023, Plaintiff filed his Complaint against County Defendants and the Pickett Defendants. (ECF No. 2). In his complaint, Plaintiff asserts seven claims against Defendants: (1) false arrest/imprisonment, malicious prosecution, and abuse of process in violation of 42 U.S.C. § 1983 against all County Defendants; (2) conspiracy in violation of 42 U.S.C. §§ 1983 & 1985 against all Defendants; (3) racial discrimination in violation of 42 U.S.C. § 1982 against all County Defendants; (4) malicious prosecution against the Pickett Defendants; (5) Abuse of Process against the Pickett Defendants; (6) county liability/official capacity against Defendant Sevier County; and (7) supervisor liability against Defendant Gentry.[6] (ECF No. 4, at 15-18).

## II.  STANDARD OF REVIEW

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*.

---

[6]The Court notes that only claims: (1) false arrest/imprisonment, malicious prosecution, and abuse of process in violation of 42 U.S.C. § 1983 against all County Defendants; (2) conspiracy in violation of 42 U.S.C. §§ 1983 & 1985 against all Defendants; (3) racial discrimination in violation of 42 U.S.C. § 1982 against all County Defendants;  (6) county liability/official capacity against Defendant Sevier County; and (7) supervisor liability against Defendant Gentry, are before the Court in the instant motion.

4

at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

### III. DISCUSSION

County Defendants raise the affirmative defense of qualified immunity, which shields government officials from individual liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question of whether a defendant is entitled to qualified immunity is ordinarily a question of law to be decided by the trial court. *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir. 1989), *cert. denied*, 493 U.S. 1072 (1990).

Determining whether a defendant is entitled to qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). The Court must determine whether the facts demonstrate a deprivation of a constitutional right. *Id.* (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). The Court must also decide whether the implicated right

was clearly established at the time of the deprivation. *Id.* The Court may begin its analysis with either prong, and the analysis may end if either prong is not met. *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017).

I.  **Claim I: False Arrest and Malicious Prosecution pursuant to 42 U.S.C. § 1983 against County Defendants.**

"A citizen who is arrested without probable cause can bring a civil action against the officer under 42 U.S.C. § 1983 for false arrest. A false arrest is a violation of the Fourth Amendment right against unreasonable seizure of persons . . .". *Parsons v. McCann*, 138 F. Supp. 3d 1086, 1106 (D. Neb. 2015) (quoting Sarah Hughes Newman, *Proving Probable Cause: Allocating the Burden of Proof in False Arrest Claims Under § 1983*, 73 U. Chi. L.Rev. 347, 347-48 (2006)). False arrest claims under 42 U.S.C. § 1983 "fail[] as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) (quoting *Anderson v. Franklin Cnty.,* 192 F.3d 1125, 1131 (8th Cir.1999)). Probable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (quoting *Borgman v. Kedley,* 646 F.3d 518, 522-23 (8th Cir. 2011)). Whether the police had probable cause at the time of Plaintiff's arrest is a question of law for the Court to decide. *See Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995). Officers are "entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable[,]" that is, officers are not liable if they have "arguable probable cause" to make the arrest. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) (citations omitted).

6

The Supreme Court has held that malicious prosecution is actionable under the Fourth Amendment. *See Thompson v. Clark*, 596 U.S. 36, 43, 142 S. Ct. 1332, 1337, 212 L. Ed. 2d 382 (2022). To prove malicious prosecution, a plaintiff must show: "(i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' . . . [meaning] without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'" *Id*. at 43, 1338. When probable cause exists "to support the plaintiff's arrest and the initiation of criminal prosecution against the plaintiff[,]" the malicious prosecution claim fails. *See Brown v. City of St. Louis, Missouri*, 40 F.4th 895, 903 (8th Cir. 2022).

  a. **County Defendant Isaac Alvarado**

"An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir.1988); *see also Moiser v. Blum*, 875 F.2d 202, 204 (8th Cir. 1989) (referring to "false arrest cases" holding that an arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under § 1983 against the arresting officer). "Law enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable." *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005). "[O]fficer[s] need not conduct a 'mini-trial' before making an arrest, but probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (cleaned up). "An officer contemplating an arrest is not free to disregard plainly exculpatory evidence." *Id*. "The protests of a resisting arrestee generally do not make an objectively reasonable arrest unreasonable." *Engleman v. Deputy Murray*, 546 F.3d 944, 950 (8th Cir. 2008) (citations omitted). "[T]he fact that a neutral

7

magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

Defendant Alvarado contends that he arrested Plaintiff pursuant to a warrant issued by Judge Wood. Defendant Alvarado argues that the documents Plaintiff showed him were not enough to overcome the arrest warrant issued by Judge Wood. Defendant Alvarado also argues that he had no way to verify if the documents were valid. Plaintiff contends that Defendant Alvarado knew or should have known the warrant was improperly obtained. Plaintiff argues that County Defendants Gentry and Hankins testified it was the position of the department—spread by word of mouth—that Plaintiff was allowed onto the disputed land and could not be charged for being there. Plaintiff also argues that because he showed Defendant Alvarado documents establishing his ownership of the property, he should not have been arrested without further due diligence.

Deputies are not lawyers trained to read legal cases or decipher ownership of land. By Plaintiff's own admission, Defendant Alvarado took several minutes to look at the documents, which exceeded the minimal further investigation required. Thus, Defendant Alvarado's reliance on a facially valid warrant secured by another officer was objectively reasonable and he had probable cause to arrest Plaintiff. Accordingly, because the Court finds no constitutional violation, Defendant Alvarado is entitled to qualified immunity on the false arrest/imprisonment claim against him.

Plaintiff also brings a malicious prosecution claim against Defendant Alvarado. Plaintiff, however, fails to show that the arrest lacked probable cause. Accordingly, because the Court finds no constitutional violation, Defendant Alvarado is entitled to qualified immunity on the malicious prosecution claim.

### b. County Defendant Randall

Defendant Randall contends that he had probable cause to seek a warrant for Plaintiff's arrest. Defendant Randall argues that he had probable cause because Defendant Jerry and Defendant Judy informed him that Plaintiff was trespassing on the undisputed fifty-five (55) acres. Plaintiff argues that Defendant Randall should have properly investigated the situation and that Defendant Randall failed to properly confirm the Pickett Defendants' ownership of the property.

As Defendant Randall points out, "[t]he issue for immunity purposes is not probable cause in fact[,] but arguable probable cause." *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000) (citation omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Borgman*, 646 F.3d at 523. It is undisputed that when Defendant Randall first responded to the trespass call the Pickett Defendants told him that Plaintiff was trespassing on the undisputed fifty-five (55) acres owned by the Pickett Defendants. Thus, the Court finds that Defendant Randall had arguable probable cause to seek an arrest warrant for Plaintiff based on this information. Accordingly, Defendant Randall is entitled to qualified immunity on the false arrest/imprisonment claim against him.

Plaintiff also brings a malicious prosecution claim against Defendant Randall. While Plaintiff and Defendant Randall fail to bring facts or arguments in support of or against this claim, the Court finds that this claim fails as a matter of law because Defendant Randall had probable cause to seek an arrest warrant, and Plaintiff provides no other reason for his arrest. Accordingly, the Court finds Defendant Randall is entitled to summary judgment on the malicious prosecution claim.

    c.    **County Defendants Gentry, Hankins, and Wahls**

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [Plaintiff's] constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (citations and internal quotation marks omitted). A county official or employee may be held liable in his or her individual capacity only in a few well-delineated factual situations; essentially there must be some personal involvement before any defendant may be held liable under § 1983. *See, e.g.*, *Messimer v. Lockhart*, 702 F.2d 729, 732 (8th Cir. 1983).

The facts are clear that County Defendants Gentry, Hankins, and Wahls had no personal involvement with or direct responsibility for any deprivation of Plaintiff's rights because they were not involved with any stage of the arrest. Plaintiff, rather confusingly, brings up threats of arrest constituting a seizure by Defendant Hankins. However, the Court fails to see how this shows any personal involvement of Defendant Hankins in the deprivation of Plaintiff's constitutional rights. The phone conversations between Defendant Hankins and Plaintiff took place in 2019, while Plaintiff was arrested on October 17, 2020. Thus, what the Court presumes is Plaintiff's personal involvement allegations against Defendant Hankins fails because the two situations are unrelated. Because Plaintiff has failed to show any personal involvement or direct responsibility for any deprivation of Plaintiff's rights, the Court finds that County Defendants Gentry, Hankins, and Wahls are entitled to qualified immunity as to the false arrest/imprisonment claims.

Further, Plaintiff makes no attempt to defend his malicious prosecution claim against County Defendants Gentry, Hankins, and Wahls. Thus, for the same reasons provided above,

County Defendants Gentry, Hankins, and Wahls are entitled to qualified immunity on the malicious prosecution claims against them.

## II. Claim II: Conspiracy pursuant to 42 U.S.C. §§ 1983 & 1985 against County Defendants[7]

For a plaintiff to state a claim for conspiracy under the equal protection provision of 42 U.S.C. § 1985 he must show: "(1) a conspiracy; (2) for the purpose of depriving another of the 'equal protection of the laws, or of equal privileges and immunities under the laws;' (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right." *Federer v. Gephardt*, 363 F.3d 754, 757-58 (8th Cir. 2004). To show a 42 U.S.C. § 1983 conspiracy claim, Plaintiff must show: "(1) that the defendant conspired with other to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citations omitted).

County Defendants argue that reporting alleged criminal behavior does not state a cognizable claim for conspiracy. They also argue that as members of a local governmental entity they cannot conspire with themselves. Plaintiff argues in response that "[t]he manner in which the defendants have conducted themselves, making and/or granting requests that are out of line with the law, how parties have represented their positions, and principles of equality and fairness, support a conspiracy finding." (ECF No. 48, at 14).

Before reaching County Defendants' argument, the Court notes that it is well settled by the Supreme Court that the nonmovant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing

---

[7]While the claim is against all Defendants, the Pickett Defendants are not a part of this motion. The Court will review the conspiracy claim against the Pickett Defendants in their motion for summary judgment. Thus, the Court will only look at the County Defendants in this claim.

11

that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Plaintiff has made no arguments to support his conspiracy claim and he has failed to come forward with specific facts showing there is a genuine issue of material fact in support of the instant claim. The Court is not "obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999).

Even when viewing the facts in a light most favorable to Plaintiff, he has not presented facts showing a conspiracy between County Defendants and the Pickett Defendants. As County Defendants point out, finding a cognizable claim for conspiracy would chill the good faith reporting of crimes because the Pickett Defendants reported what they perceived to be a crime to County Defendants who were acting as law enforcement officers. Also, County Defendants by themselves cannot be part of a conspiracy because "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012). Accordingly, the Court finds that Plaintiff has failed to show a constitutional violation, and thus County Defendants are entitled to qualified immunity on this claim.

**III.**     **Claim III: Racial Discrimination in violation of 42 U.S.C. § 1982 Against County Defendants.**

As an initial matter, while Plaintiff's 42 U.S.C. § 1982 claim is directed against all County Defendants, Plaintiff only raises arguments and facts in support of this claim against Defendant Hankins and briefly mentions Defendant Gentry. Thus, the Court will focus its analysis on Plaintiff's 42 U.S.C. § 1982 claim against Defendant Hankins and Defendant Gentry.

For Plaintiff to establish a 42 U.S.C. § 1982 claim for interference with the rights and benefits connected with his property, he must show: "(1) membership in a protected class; (2) discriminatory intent on the part of the defendant; and (3) interference with the rights or benefits connected with the ownership of property." *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004). "A violation of § 1982 can be established by direct or indirect evidence." *Peet v. Morfitt*, No. 17-CV-1870 (ECT/TNL), 2020 WL 3871497, at *6 (D. Minn. July 9, 2020) (citing *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1452 (4th Cir. 1990)).

County Defendants argue they were unaware of Plaintiff's race—with the exception of Defendant Alvarado when arresting Plaintiff—and that there is no basis for this claim. Plaintiff argues that Defendant Hankins threatened Plaintiff with arrest, supported an arrest warrant against Plaintiff, and "has done nothing to the [Pickett Defendants], a white family who continue to occupy the property without interference." (ECF No. 48, at 12).

There is no dispute that Plaintiff is a member of a protected class as a Black man, and because of this, meets the first element. It is also undisputed that Defendant Hankins told Plaintiff—over the course of several phone calls—that if he went on the Pickett Defendants' property he might be arrested. What is in dispute is that Plaintiff claims he met with Defendant Hankins in person in 2019. Thus, if Defendant Hankins met with Plaintiff, he would have known Plaintiff was a Black man. Also in dispute is the way the phone calls were conducted. County Defendants state "[Defendant] Hankins told [Plaintiff] if he went on the [Pickett Defendants'] property, he might be arrested for trespassing." (ECF No. 39, at 4). Plaintiff states "Defendant Hankins told [Plaintiff], with no ambiguity, that he would be arrested if he returned to the disputed property." (ECF No. 48-1, at 3).

13

However, again, Plaintiff only offers conclusory allegations and speculation to support his claim. Plaintiff offers no material facts to support a showing that Defendant Hankins acted with discriminatory intent. Even if taken as true, the disputed facts would not support a showing that Defendant Hankins acted with discriminatory intent. Thus, Plaintiff fails the second element that Defendant Hankins was acting with discriminatory intent.

Plaintiff briefly states that "the racial aspect of the case, which [Plaintiff] communicated to Defendant Gentry, supports a claim under 42 U.S.C. § 1982." (ECF No. 48, at 14). Plaintiff argues that he informed Defendant Gentry that he believed the sheriff's office was taking sides because Plaintiff's family was Black and the Pickett Defendants were white. However, Plaintiff fails to offer any facts or arguments to support a finding that Defendant Gentry was acting with discriminatory intent. Thus, Plaintiff fails on the second element against Defendant Gentry.

The Court notes that Plaintiff and County Defendants fail to address the third element of the claim. However, Plaintiff has no rights in the fifty-five (55) acres and Plaintiff's rights in the disputed property are just that, disputed. Plaintiff relies on the order stating he has co-tenancy, however, there is still ongoing litigation in state court surrounding who owns the disputed property. Thus, Plaintiff fails the third element as well.

Plaintiff also fails to offer any evidence or point to facts that show the other County Defendants acted with discriminatory intent or that there was a constitutional violation of Plaintiff's rights. Accordingly, the Court finds that County Defendants are entitled to qualified immunity on the racial discrimination claim against them.

**IV.     Claim VII: Supervisor Liability against Defendant Gentry**

Defendant Gentry cannot be liable for the torts of his subordinates merely because he is the sheriff. *See Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012). "[A] supervising officer

can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citations omitted). Plaintiff alleges it was Defendant Gentry's failure to train and supervise the offending actors that caused the deprivation. Because of this, Defendant Gentry may be held liable in his individual capacity as a supervisor if he: "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Plaintiff]" *Livers*, 700 F.3d at 355 (citations omitted). To show "deliberate indifference or tacit authorization, [Plaintiff] must allege and ultimately prove that [Defendant Gentry] had notice that the training procedures and supervision were inadequate and likely to result in the constitutional violation." *Id*. at 355-56.

Plaintiff argues that he had informed Defendant Gentry of the ongoing issue with Defendant Hankins threating to have him arrested for going on the disputed land. He also argues that his lawyer sent a letter to Defendant Gentry discussing the land dispute issue, and why he had a right to be on the disputed land. Plaintiff argues that while Defendants Gentry and Hankins claim an oral policy was set into place—that Plaintiff was not to be arrested for being on the disputed property—there was no proof the policy was real as none of the other County Defendants have mentioned it. County Defendants argue there is no "proof of any training, supervision, or any other deficiencies and certainly no deliberate indifference to any such deficiencies by [Defendant Gentry] prior to Plaintiff's arrest." (ECF No. 38, at 11). County Defendants also argue that Defendant Gentry's policies require arrests be made with a warrant or probable cause, and that the deputies undergo comprehensive training. (ECF No. 39, at 5).

15

The Court has found that County Defendants had probable cause and arguable probable cause for their actions in arresting Plaintiff and seeking an arrest warrant. Plaintiff also fails to point out any other actions by County Defendants that were unconstitutional, and Defendant Gentry cannot be held individually liable if there is no underlying constitutional violation. *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). Accordingly, Defendant Gentry is entitled to qualified immunity on the supervisor liability claim against him.

## V. Claim VI: Official Capacity/County Liability against Sevier County

Plaintiff brings his claims against County Defendants in their individual and official capacities. A lawsuit against a county official or employee, in his official capacity, is the equivalent of a suit against the county itself. *See Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991). Sevier County may only be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional county policy or custom. *See Doe v. Washington Cnty*, 150 F.3d 920, 922 (8th Cir. 1998). A plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). When there is no written policy, a plaintiff must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law. *See Jane Doe A v. Special Sch. Dist. of St. Louis Cnty*, 901 F.2d 642, 646 (8th Cir. 1990).

Plaintiff fails to point out a municipal policy or identify a pattern of widespread unconstitutional conduct from County Defendants that caused his injury. He has not shown any unconstitutional county policy or custom, nor has he shown an unconstitutional county policy that was so pervasive that it had the effect of law that violated his rights. Because there was no

16

underlying constitutional violation against Plaintiff, County Defendant Sevier County cannot be held liable in its official capacity. Accordingly, the Court finds that Plaintiff has failed to show there is sufficient evidence to support a jury verdict in his favor on his official capacity/county liability claims, and thus County Defendant Sevier County is entitled to summary judgment on this claim.

## IV. CONCLUSION

For the reasons stated above, the Court finds that County Defendants' Motion for Summary Judgment should be and hereby is **GRANTED**.

1. County Defendants are **GRANTED** summary judgment on all false arrest/imprisonment claims against them.

2. County Defendants are **GRANTED** summary judgment on all malicious prosecution claims against them.

3. County Defendants are **GRANTED** summary judgment on all conspiracy claims against them.

4. County Defendants are **GRANTED** summary judgment on all racial discrimination claims against them.

5. Sevier County is **GRANTED** summary judgment on the county liability/official capacity claim against it.

6. Defendant Gentry is **GRANTED** summary judgment on the supervisor liability claim against him.

**IT IS SO ORDERED**, this 21st day of February, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge